UNITED STATES

v.

**Wayne S. BEVACQUA, Health Services Technician Second Class, U.S. Coast Guard.**

**CGCM 0064.
Docket No. 1001.**

U.S. Coast Guard Court of Military Review.

9 Aug. 1993.

Trial Counsel: LT William J. Shelton, USCGR.

Individual Military Counsel: LT John B. Gately, USCGR.

Associate Defense Counsel: LT Vida Antolin–Jenkins, JAGC, USNR (Excused as counsel 9 June 1992).

Associate Defense Counsel: LT Monica L. Lombardi, USCGR (Detailed as counsel 9 June 1992).

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Six, BAUM, BRIDGMAN and BASTEK, Appellate Military Judges.

BAUM, Chief Judge:

At a general court-martial composed of officer and enlisted members, Appellant, despite his not guilty pleas, was convicted of three specifications of violating a lawful order, one specification of maltreatment of a person subject to his orders, two specifications of sodomy, one specification of assault consummated by a battery, three specifications of adultery, one specification of indecent language, and one specification of solicitation to commit sodomy in violation of Articles 92, 93, 125, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C.A. §§ 892, 893, 925, 928, 934. After the military judge found various of these offenses multiplicious for sentencing purposes, the court sentenced Appellant to a bad conduct discharge, confinement for six months, and reduction to pay grade E–

1. That sentence was approved by the convening authority.

Before this Court, Appellant has assigned seven errors, all but one of which are deemed to be without merit and need not be addressed. After considering the briefs and hearing oral argument, we are convinced that the one remaining assignment of error has merit and requires that the sentence be set aside in order that a rehearing on that portion of the trial may be held. Assignment II, the one error not rejected, asserts that:

RELIEF OF THE DETAILED DEFENSE COUNSEL AND PROCEEDING TO SENTENCING OVER THE OBJECTION OF APPELLANT CONSTITUTED AN ABUSE OF DISCRETION AND IMPROPER INTERFERENCE WITH APPELLANT'S RIGHTS TO ASSISTANCE OF COUNSEL

I

THE FACTS

The facts giving rise to this assignment are well stated in Appellant's brief. The following is drawn from that account:

A detailed defense counsel was assigned prior to the Article 32, UCMJ hearing. The detailed counsel was relieved when requested Individual Military Counsel (IMC) was made available, but was reassigned, as Associate Defense Counsel (Assoc. DC) after a short hiatus. The Assoc. DC participated fully in the preparation and presentation of the defense case and was to conduct the sentencing portion of the trial.

Findings were announced on the evening of 21 May 1992 and sentencing proceedings were set to begin on the morning of 22 May. However, at that time Appellant was unable to proceed with sentencing, and the case was continued for an indefinite period. Appellant underwent a mental examination in accordance with R.C.M. 706, Manual for Courts–Martial, United States 1984 (MCM) during the continuance.

On 12 June 1992, the court-martial was reconvened for sentencing after Appellant was found to have sufficient mental capaci-

ty to continue with the trial. The sentencing proceedings were conducted without the presence of Assoc. DC over the strong objections of Appellant. The Assoc. DC had been relieved because of a temporary assignment afloat and a substitute Assoc. DC was detailed.

## II

## GROUNDS FOR RELIEF OF COUNSEL BY STAFF JUDGE ADVOCATE

The relief of the originally detailed Assoc. DC and assignment of a substitute were effected by the Staff Judge Advocate, Maintenance and Logistics Command Atlantic, who cited as authority for his action Rule for Courts–Martial (R.C.M.) 505(d)(2)(B)(iii) and R.C.M. 506(b)(3).

### A

Excusal of Detailed Counsel under R.C.M. 506(b)(3)

R.C.M. 506(b)(3) in its entirety reads as follows:

*Excusal of detailed counsel.* If the accused is represented by individual military counsel, detailed defense counsel shall normally be excused. The authority who detailed the defense counsel, as a matter of discretion, may approve a request from the accused that detailed defense counsel shall act as associate counsel. The action of the authority who detailed the counsel is subject to review only for abuse of discretion.

■ The staff judge advocate was the proper authority to detail counsel pursuant to Article 3–C–1 of the Coast Guard's Military Justice Manual, COMDTINST M5810.-1C, in effect at the time. As authorized by R.C.M. 506(b)(3), he could have permanently excused the detailed defense counsel from further participation in the case when the IMC was first made available. Instead, the detailed defense counsel, after first being excused, was then reassigned as associate defense counsel.

Despite the stage of trial, the active role played by Assoc. DC to that point, counsel's intended role at sentencing, and the accused's strong desires in the matter, the military judge, nevertheless, ruled that the staff judge advocate had authority to excuse the Assoc. DC under the terms of R.C.M. 506(b)(3). The Government, citing that rule and Article 38(b)(6), UCMJ, argues that the judge correctly ruled in this regard, that the excusal of detailed counsel when an IMC has been assigned is within the sound discretion of the authority who detailed the counsel and such decision should not be reversed absent an abuse of discretion.

■ Appellant argued at trial that the relief of his Assoc. DC under R.C.M. 506(b)(3) was an abuse of discretion. We agree that such action was, indeed, an abuse of discretion, but it was also more than that. It was, as we see it, an act not authorized under either R.C.M. 506(b)(3) or Article 38(b)(6), UCMJ.

■ Both Article 38(b)(5) and (6), UCMJ, and R.C.M. 506(b)(3) provide for excusal of *detailed defense counsel* if the accused is represented by individual military counsel, but, if the accused requests the detailed defense counsel act as *associate defense counsel*, that request may be approved as a matter of discretion. The rule says nothing about excusing associate counsel after such a request is granted. Detailed defense counsel is the descriptive title for counsel before a request for retention as associate counsel is approved. Without a statement expressly authorizing excusal of an associate counsel in the same manner as detailed defense counsel, we believe the rule applies only to the situation when an individual military counsel is first made available.

At that point, the detailing officer must decide whether to excuse detailed counsel from further participation or allow retention in the case. If retention is permitted, it is our belief that subsequent removal must be for good cause shown, unless the accused consents. To read Article 38, UCMJ, and R.C.M. 506 otherwise would allow detailing officers unfettered authority to sever attorney-client relationships at any point in the trial. We do not believe

that is what either the Congress or the President intended. Accordingly, we find it was error to excuse Assoc. DC under color of R.C.M. 506(b)(3).

### B

Severing the Attorney–Client Relationship for Good Cause Shown Under R.C.M. 505(d)(2)(B)(iii)

█ As his other basis for removing counsel, the staff judge advocate cited R.C.M. 505(d)(2)(B)(iii), which does call for a showing of good cause. Accordingly, we will review the staff judge advocate's action under this rule also and determine whether good cause has been shown. In so doing, we note that R.C.M. 505(f) discusses the term "good cause" as it applies to changes of members, military judge and counsel. That rule reads as follows:

> *Good cause.* For purposes of this rule, "good cause" includes physical disability, military exigency, and other extraordinary circumstances which render the member, counsel, or military judge unable to proceed with the court-martial within a reasonable time. "Good cause" does not include temporary inconveniences which are incident to normal conditions of military life.

The only reason given by the staff judge advocate for removing Assoc. DC in his letter of 9 June 1992 to that effect is that, as a result of temporary additional duty, counsel would be unavailable for trial for the next two months.

The staff judge advocate's letter, standing alone, does not establish a basis for finding good cause under the terms of R.C.M. 505(f). In order to find good cause, as defined by that rule, we must look for evidence in the record that this temporary additional duty amounted to either military exigency or an extraordinary circumstance—rather than a temporary inconvenience incident to normal conditions of military life—that such duty rendered counsel unable to proceed with the court-martial within the stated two months of unavailability, 9 June 1992 to 8 August 1992, and

that such a period was not a reasonable time.

### C

Information of Record Bearing on Good Cause

The record reveals that on 22 May 1992, when an indefinite continuance to complete an R.C.M. 706 medical board for the accused was ordered by the judge, he chose the 16th and 17th of July as unconflicted preliminary dates for everyone to keep open for resumption of trial. The judge acknowledged that sea duty orders of a temporary nature were pending for Assoc. DC, but stated, "we may have problems along those lines, but it's not insurmountable." Record at 956. At that point, the judge undoubtedly considered a delay until 17 July 1992 to be "within a reasonable time."

Two and a half weeks later, much sooner than expected, the judge was informed that the R.C.M. 706 board had been completed. In response, he held four telephone conferences on 8 and 9 June 1992 pursuant to R.C.M. 802 to reschedule the sentencing portion of trial. During those conferences, the judge was made aware that the Assoc. DC had departed on the planned shipboard TAD assignment, that the accused strongly desired the Assoc. DC be present for sentencing, and that the Assoc. DC might be available on 10 July 1992, if the ship made a contemplated Norfolk, Virginia port call on 9 July 1992.

The judge conveyed this information to the staff judge advocate on 9 June, but indicated that, without official confirmation of the ship's schedule, he was inclined to reconvene the trial on either the 12th or 15th of June, since all of the members were available on those dates. In that regard, he also noted that "there are seven members sitting on this court and 2 of them are unavailable on 7/10/92. One of them is unavailable from 6/21/92 until 7/19/92 due to leave and I have a GCM scheduled in Honolulu HI during the week of 7/13/92." Appellate Exhibit LVI.

He also informed the staff judge advocate that the accused, in stating his strong desire that Assoc. DC represent him at sentencing, had also expressed a loss of confidence in his IMC. Out of concern for the accused's counsel rights, the judge requested the detailing of a substitute defense counsel to represent the accused, along with the IMC, at sentencing on one of the two indicated dates in June.

The judge held his final R.C.M. 802 conference on 9 June. Upon hearing that two members had conflicts on 15 June, but that all the members could be present on June 12th, he set that date for the next session of trial. Whereupon, IMC moved to continue the case until the Assoc. DC would be available. The memorandum from the judge attached to the record as documentation of that conference states, "[w]ith the consent of all both (sic) parties I did rule that the motion for a continuance was denied," with written ruling to follow. Appellate Exhibit LVII.

That decision and the subsequent written denial were made without indication of any attempt to contact Assoc. DC, her ship's commanding officer, or her parent command, to determine when she would be available to complete the trial. Those findings of fact relating to her availability for trial that are stated in the written ruling are based only on a copy of the TAD orders and the memorandum account of the four R.C.M. 802 conferences, which do not reflect inclusion of Assoc. DC in the polls taken with regard to acceptable trial dates.

Orders issued by the Commanding Officer, Naval Legal Service Office, Norfolk, authorized Assoc. DC to proceed on or about 6 June 1992 to USS WASP and return in approximately 83 days on an estimated date of 28 August 1992, with reason for travel listed as "LEGAL ASSISTANCE." Apparently, these orders, standing alone, accounted for the judge's conclusion in his written denial of a continuance that the "earliest potential trial date at which all of the original parties could be present is 31 August 1992." Appellate Exhibit LXII.

In a clemency letter to the convening authority, the Assoc. DC states that upon reporting to USS WASP she informed the commanding officer that she still had a case pending resolution which might require her return to the continental United States. To her knowledge, no effort was made by the Coast Guard to ascertain whether it might have been possible for her to return from the ship in order to complete the case. Moreover, there is no indication in the record that any inquiries were made concerning that possibility. Assoc. DC also reveals in her letter that she did not learn of her excusal from the case until 21 July 1992 when USS WASP returned to Norfolk.

### D

#### Good Cause Conclusion

After considering the matters of record which augment the staff judge advocate's letter excusing counsel, it is our conclusion that good cause for severing the attorney-client relationship between Assoc. DC and the accused has not been established. The good cause requirements of R.C.M. 505(f) have not been met in any respect. First, there is no evidence that Assoc. DC's temporary additional duty assignment, for the stated reason of providing shipboard legal assistance, constituted a "military exigency" or "other extraordinary circumstance." Secondly, the basis for the staff judge advocate's conclusion of a "two-month" unavailability is not clear, but accepting that conclusion for argument's sake, we do not find the period to be unreasonable, given the judge's tentative trial dates for 16 and 17 July which he set in May.

Finally, we do not believe the Government has established that Assoc. DC was truly unavailable for trial for the two-month period from 9 June 1992 to 8 August 1992. There is no evidence that the judge or staff judge advocate made any inquiries or directed others to determine whether counsel could have been present for trial sometime during that period. When the scheduling conferences were being held, the defense provided information indicating Assoc. DC's possible availability around the

time of the originally contemplated dates of 16 and 17 July, but the judge chose not to seek verification of actual availability, apparently due to court member conflicts.

After the trial, Assoc. DC's letter to the convening authority shows that she was, in fact, available by 21 July at the latest, without any Government efforts at all. Accordingly, there is simply no basis in the record for the staff judge advocate's stated conclusion on 9 June 1992 that associate defense counsel "will be unavailable for trial for the next two months."

■ In addition to the analysis under R.C.M. 505(f), case law makes it clear that administrative convenience does not equate to the good cause that is necessary to terminate an attorney-client relationship, over the objection of an accused. *U.S. v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970). The information from the record that we have recounted convinces us that the excusal of Assoc. DC in order to go forward with the trial on 12 June, rather than attempting to work out another date when she could be present, amounted to administrative convenience, not good cause.

■ It appears that every effort was made to accommodate the court members in scheduling a trial date, including acceding to generous leave plans, with no similar effort made on accused's behalf to maintain his desired attorney-client relationship. It seems the military judge and the staff judge advocate simply accepted the Assoc. DC's legal assistance assignment as immutable, which ran counter to the judge's earlier observation on the record that problems presented by that assignment were "not insurmountable." Record at 956. If any efforts were made to surmount the problem, they are not documented in the record.

■ The Court of Military Appeals said in *U.S. v. Catt*, 1 M.J. 41, 48 (C.M.A.1975) that, "we have consistently held that the unlawful severance of an existing attorney-client relationship dictates reversal without regard to the amount of prejudice sustained. *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972);

*United States v. Andrews*, [21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972)] *supra; United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Williams*, 18 U.S.C.M.A. 518, 40 C.M.R. 230 (1969)." Applying the principles from these opinions to the facts of this case, we find that, without good cause having been shown, there has been an unlawful severance of an existing attorney-client relationship which requires reversal. Since the sentencing stage alone was affected, only the sentence need be set aside.

## III

### OTHER QUESTIONS BEARING ON EXCUSAL OF COUNSEL

#### A

#### Appropriate Authority to Order Excusal

Having determined the action necessary in this case, we believe there are other questions bearing on excusal of counsel that should also be addressed before leaving the subject. Foremost, is the question of who is the most appropriate authority to order excusal of a defense counsel at the various stages of a court-martial—the military judge or the staff judge advocate? Unquestionably, the judge has no role in the initial detail of counsel. Excusal of counsel is another matter.

Excusal authority is shared by the staff judge advocate and the military judge. Before an attorney-client relationship is established, the staff judge advocate/detailing officer may replace a counsel at will. R.C.M. 505(d)(2)(A). After an attorney-client relationship is formed, however, the circumstances under which that relationship may be broken are limited. We believe the authority of the detailing officer/staff judge advocate to act in those circumstances is also circumscribed.

■ R.C.M. 505(d)(2)(B) says that the "authority competent to detail" counsel may excuse or change such counsel after formation of an attorney-client relationship only: (1) for good cause shown on the record, (2) upon request of the accused, (3)

upon application for withdrawal by counsel under R.C.M. 506(c), or (4) under R.C.M. 506(b)(3), which provides for excusal of detailed defense counsel when a requested IMC has been made available. Although R.C.M. 505 indicates that these actions may be taken by the authority who details counsel, we believe that after the trial commences it is only the military judge who may sever the attorney-client relationship, except in the limited circumstance under R.C.M. 506(b)(3).

Even then, as we have indicated earlier, if the detailing authority decides to allow detailed counsel to continue as associate counsel, subsequent excusal must be for good cause shown on the record. In that event, we believe the military judge, not the staff judge advocate, is the appropriate authority to effect such action. This outlook is consistent with the view that the military judge controls the trial proceedings and ensures that the rights of the accused are protected.

The Rules for Courts–Martial, as presently written, are certainly susceptible to varying interpretations in this area and may have accounted for the actions in this case. Particularly confusing, is the provision under R.C.M. 505(d)(2)(B) that says the authority competent to detail counsel may excuse counsel upon application by such counsel for withdrawal under R.C.M. 506(c). When we turn to that rule, however, we find it says: "Except as otherwise provided in R.C.M. 505(d)(2) and subsection (b)(3) of this rule, defense counsel may be excused only with the express consent of the accused, *or by the military judge* upon application for withdrawal by the defense counsel for good cause shown." (emphasis added)

## B

### Appropriate Forum

■ As we have stated, we believe the military judge was the proper person to decide the question of excusing counsel. Moreover, in our view, severing the attorney-client relationship should be accomplished only after good cause has been established upon a full airing of the issue on the record, normally at an Article 39(a) session. That was not done. Instead, scheduling decisions were made at R.C.M. 802 conferences, off the record, that resulted in the excusal of Appellant's counsel. Such conferences are not required to be recorded and, accordingly, are singularly inappropriate for deciding matters that adversely affect counsel rights. This fact is graphically illustrated by the following exchange on the record after the trial reconvened on 12 June without the accused's earlier associate counsel:

[THE MILITARY JUDGE]: Now, do you understand your counsel rights, at this point?

PETTY OFFICER BEVAQUA (sic): I believe so, your Honor. But could I say just one thing?

THE MILITARY JUDGE: You may.

PETTY OFFICER BEVAQUA (sic): I would like to refer back to the 802 Conference we had on the telephone when I was in Walter Reed, and state that my feelings remain the same.

Record at 1011.

No further amplification of what was said at that R.C.M. 802 conference is provided. Presumably, the accused was merely reiterating his strong desire to have his Assoc. DC continue to represent him, but without a verbatim account we cannot be certain of the full content of his earlier statement. Furthermore, absent the record required at an Article 39(a) hearing, we are unable to tell if the government made even a token effort at showing good cause for severing the attorney-client relationship as defined in R.C.M. 505(f). There is no indication that such an effort was undertaken.

Instead, it seems to have been accepted as a given that the counsel would be removed from the case simply on the basis of her temporary additional duty orders unless the accused could persuade the judge to delay trial until September. In this manner, burdens were apparently reversed. The burden on the government of establishing good cause for severing the attorney-

client relationship became, in its place, a burden on the accused to justify delay beyond June 12th in order to keep his attorney. If this is what occurred, it did not comport with the Rules for Courts–Martial or case law on severing the attorney-client relationship. Unfortunately, we cannot tell exactly what was said at the conferences that would clarify this matter because such conferences are not part of the verbatim record.

Aside from these record deficiencies, the Manual for Courts–Martial, 1984 spells out in general terms the situations unsuitable for R.C.M. 802 conferences. For example, the Discussion following R.C.M. 802 says that the purpose of conferences authorized by that rule "is to inform the military judge of anticipated issues and to expeditiously resolve matters on which the parties can agree, *not to litigate or decide contested issues.*" (emphasis added). The Analysis of R.C.M. 802 in Appendix 21 of the Manual expands on this point as follows:

> The discussion provides some examples of the potential uses of conferences. As noted, issues may be resolved only by agreement of the parties; *they may not be litigated or decided at a conference. To do so would exceed, and hence be contrary to, the authority established under Article 39(a).* (emphasis added)

In view of the foregoing, we believe the judge's denial of a continuance should not have been decided at an R.C.M. 802 conference. The fact that the denial led to the removal of a defense counsel without the accused's consent makes the case against use of the conference for such a purpose even stronger. Despite the judge's statement that his ruling was with the consent of all parties, it was a decision adverse to the accused, which convinces us that it should have been litigated on the record at an Article 39(a) session of trial.

Ultimately, there was such litigation of a second motion for a continuance by the substitute associate defense counsel, but by then the services of the first counsel had already been terminated without a verbatim account of the process leading to

that decision. Suffice to say, we believe that proceedings which result in a ruling depriving the accused of his counsel, without his consent, should not be conducted at an R.C.M. 802 conference. In our reading of the Discussion and Analysis pertaining to R.C.M. 802, quoted above, the parties' consent to such a ruling does not confer authority to proceed in this manner.

## IV

### Recapitulation

To recapitulate, we have determined:

(1) that when the detailing officer granted the request for retention of detailed defense counsel as associate counsel, the subsequent excusal of that counsel should have been ordered only by the military judge for good cause shown on the record, unless the accused consented to such excusal. Under these circumstances, the detailing officer did not have discretionary authority to excuse Assoc. DC pursuant to R.C.M. 506(b)(3).

(2) that, once a trial commences, the severing of the attorney-client relationship by excusal of a defense counsel for good cause under R.C.M. 505(d)(2)(B)(iii) must be accomplished by the military judge on the record, not at an R.C.M. 802 conference, unless the accused consents to counsel's excusal.

(3) that a requested continuance of the trial by IMC in order to ensure the presence of Assoc. DC should not be considered and adversely ruled upon at an R.C.M. 802 conference. The parties' consent to such a ruling will not confer authority in this regard.

(4) that the foregoing conclusions necessarily include determinations that the rules with respect to severing attorney-client relationships apply with equal force whether there is one, or more than one, defense counsel, and apply at the sentencing stage as well as earlier. The fact that the accused had been provided his requested IMC and that a substitute Assoc. DC was to be detailed did not lessen the need for a showing of good cause before the original Assoc. DC

could be excused. Furthermore, the fact that findings had been reached and only sentencing proceedings remained to be held, should not have had any bearing on the decision to excuse counsel. The requirements for a good cause showing are the same at that stage as they are before findings.

(5) that good cause for severing the attorney-client relationship in this case has not been shown.

For the foregoing reasons, the findings of guilty are affirmed, but the sentence is set aside. A rehearing on sentence is ordered. If a sentence rehearing is determined to be impracticable, a supplementary court-martial order should be issued by proper authority reflecting that fact and that the findings of guilty have been affirmed with no sentence.

Judges BRIDGMAN and BASTEK concur.