# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

### Elijah W. GARCIA
### Seaman (E-3), U.S. Coast Guard

### CGCMG 0246

### Docket No.  1304

### 3 November 2009

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic. Tried at Miami, Florida on 22 August 2007; Jacksonville, Florida on 18 September 2007; and Norfolk, Virginia on 9 January 2008.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Benedict S. Gullo, USCGR |
| Assistant Trial Counsel: | LT Tiffany A. Hansen, USCGR |
| Defense Counsel: | LT Brian C. Burgtorf, USN |
| Defense Counsel: | LT Ryan Mattina, JAGC, USN |
| Assistant Defense Counsel: | LTJG Robert C. Singer, JAGC, USNR |
| Appellate Defense Counsel: | LT Robert M. Pirone, USCGR |
| | LCDR Angela R. Watson, USCGR |
| | LT Kelley L. Tiffany, USCGR |
| Appellate Government Counsel: | LCDR Brian K. Koshulsky, USCG |
| | LT Emily P. Reuter, USCG |

### BEFORE
### McCLELLAND, LODGE & TOUSLEY
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by a general court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses:  two specifications of insubordinate conduct toward a superior petty officer, in violation of Article 91, Uniform Code of Military Justice (UCMJ); one specification of dereliction of duty, in violation of Article 92, UCMJ; two specifications of making a false official statement, in violation of Article 107, UCMJ; one specification of wrongful distribution

of a controlled substance, in violation of Article 112a, UCMJ; and one specification of committing an indecent act, in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for eight months, forfeiture of all pay and allowances, reduction to E-1, and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged. The pretrial agreement did not affect the sentence.

Before this Court, Appellant has assigned two errors: (1) Appellant's constitutional Fifth and Sixth Amendment rights were denied by the Convening Authority and the military judge when they prohibited Appellant's counsel from recording testimony during the Article 32 investigation and denied Appellant's motion to hold a new Article 32 hearing because no recording was made; and (2) Appellant was denied his choice of representation by military counsel originally detailed to represent him and with whom he had formed an attorney/client relationship.

We heard oral argument on the first issue on 16 September 2009. We find no error and affirm.

**Facts**

Charges were preferred against Appellant on 29 May 2007. On 13 June 2007, the defense requested that the government tape-record the proceedings in the investigation under Article 32, UCMJ, or, in the alternative, that the defense be permitted to record the proceedings and provide tapes thereof to the government. The request was denied on the same day, with the proviso that the defense was permitted to record the proceedings under the following conditions:

a. The defense will produce a professional, verbatim transcript of the entire hearing from the recordings at Defense expense. . . .

b. The Defense will provide a copy of this transcript to the Investigating Officer at Defense expense.

c. The Defense will agree that the time required to produce the transcript from the tapes will be considered excludable delay in accordance with R.C.M. 707(c).

(Appellate Ex. I encl. 2; Appellate Ex. II encl. 2.)

The defense requested reconsideration, protesting a lack of transcription resources and reiterating the offer to provide tapes to the government. The request was denied. The Article 32, UCMJ, investigation took place on 18 June 2007 and was not recorded.

On 8 August 2007, the defense submitted a motion for a new Article 32 investigation, which would be recorded. Arraignment and motions session took place on 22 August 2007. Thereafter, the military judge issued a written ruling, Appellate Exhibit XXV, denying the motion for a new Article 32 investigation. The trial was scheduled for 15 October 2007.

On 18 September 2007, a session took place "to determine whether or not good cause exists to release Lieutenant Burgtorf from his position as the detailed Defense Counsel" because he had orders to deploy to Iraq, detaching prior to the start of the court-martial, with estimated return date of 27 April 2008. ($R_1$ at 89;[1] Appellate Ex. XIV.) He expected to go to the Law and Order Task Force in Baghdad, whose mission was to establish the rule of law in Iraq by prosecuting major insurgents and individuals accused of placing improvised explosive devices, and by conducting training. ($R_1$ at 93.) His original detachment date was 29 October 2007, but on 28 August 2007, the detachment date was changed to 8 October 2007. (Appellate Ex. XIV.) In the meantime, the 15 October trial date had become untenable because a defense witness was unavailable. ($R_1$ at 96.) A new defense counsel had been detailed to replace LT Burgtorf. (Appellate Ex. XIV, XV.) Appellant objected to releasing LT Burgtorf because the new defense counsel had not been present at the Article 32 investigation, which had not been recorded. The military judge found that Appellant had an attorney-client relationship with LT Burgtorf, ruled that good cause had been shown to release LT Burgtorf, and accordingly released him, noting, among other things, that the assistant defense counsel, who remained detailed, had been present at the Article 32 investigation. ($R_1$ at 97-98.)

---

[1] The trial was held on three separate dates. $R_1$ herein denotes transcript pages from the 22 August 2007 and 18 September 2007 sessions. Pagination of the transcript restarts at 1 on the third date, 9 January 2008.

**Recording Article 32 testimony**

Appellant argues that denial of the request to tape-record the proceedings violated his Fifth and Sixth Amendment rights.

We assess the military judge's denial of the motion for a new Article 32 investigation for abuse of discretion. It appears that the military judge assessed the government denial of the defense request to record the Article 32 investigation for abuse of discretion. Of course, denial of a Constitutional right would be an abuse of discretion. Accordingly, we first address the legal question of whether any of Appellant's Constitutional rights were denied.

As to the Fifth Amendment, he cites federal and state cases holding that a party has a right to record trial proceedings where no official record is made, in furtherance of appeal rights. We view these cases as inapposite to the question of recording an Article 32 investigation, from which no appeal can be taken because no final decision as to guilt or innocence is produced by an Article 32 investigation.

As to the Sixth Amendment, Appellant claims that prohibiting the recording of Article 32 testimony interferes with counsel's representation of his client by taking away a tool for accurately taking notes, and impairs confrontation of witnesses.

Confrontation of witnesses by use of Article 32 testimony may bring into play Military Rule of Evidence (M.R.E.) 801(d)(1), Manual for Courts-Martial, United States (2008 ed.). M.R.E. 801(d)(1) proclaims a prior statement by a witness not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . " In a typical cross-examination scenario, counsel might ask the witness about testimony given by the witness at the Article 32 investigation that was inconsistent with the witness's direct testimony at trial. Having done so, under M.R.E. 801(d)(1), counsel would be able to introduce the prior inconsistent testimony, since testimony at an Article 32 investigation is given under oath. This could be done by testimony of a person who attended the Article 32 investigation. The lack of a

4

recording for either the cross-examination or for the introduction of the prior testimony may be less than ideal, but Appellant does not have a right to the ideal. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The same may be said about tools for accurately taking notes.

Incidentally, the other obvious use of Article 32 testimony at trial would be governed by M.R.E. 804(b)(1). This rule allows admission at trial of former testimony, including that given at an Article 32 investigation in the form of a verbatim record, if the declarant is unavailable at trial. Either party might make use of this rule. If a defense witness is expected to be unavailable at trial, one would expect a specific request, in advance, for a transcript of that witness's Article 32 testimony.

Considering the foregoing, we see no Constitutional dimension to the denial of the defense request to record the Article 32 investigation. The question remains whether, aside from Constitutional considerations, the government or the military judge abused their discretion on this issue.

Rule for Courts-Martial (R.C.M.) 405(j)(2)(B), echoing Article 32(b), UCMJ, provides that the report of the Article 32 investigation shall include the substance of all testimony taken. This is plainly short of a requirement for a verbatim transcript, and a verbatim transcript is not required. *United States v. Matthews*, 16 M.J. 354, 362 (C.M.A. 1983). However, according to R.C.M. 405(d)(3), a reporter may be detailed to the investigation. The Coast Guard Military Justice Manual, COMDTINST M5810.1D, provides at paragraph 3.F.4., "A reporter will not be detailed to an investigation under Article 32, UCMJ unless the OEGCMJ [officer exercising general court-martial jurisdiction] over the accused so authorizes in unusual or complex cases." The OEGCMJ (who later convened the court-martial) invoked this provision in denying the defense request for the government to tape-record the proceedings. (Appellate Ex. I encl. 2; Appellate Ex. II encl. 2.) There is apparently no guidance on the question of whether the defense

may tape-record the proceedings, aside from R.C.M. 405(c), which allows the convening authority to "give procedural instructions not inconsistent with these rules."

The military judge considered the defense motion for a new Article 32 investigation that the government would tape-record in light of the witnesses' existing testimony (as reflected in the Article 32 report) and how those witnesses' testimony, if recorded at a new Article 32 investigation, might conceivably be used at trial. Appellant does not take issue with the judge's specific and detailed reasoning, relying solely on his Constitutional arguments. As previously noted, we find no Constitutional error in the military judge's denial of the motion, and in other respects we find no abuse of discretion in his ruling.

This is not to say that the convening authority did not abuse his discretion in denying the defense request to be permitted to tape-record the proceedings and provide tapes to the government. We do not reach that question.[2]

As an alternative holding, we find that Appellant's guilty plea waived the issue of whether the military judge abused his discretion.[3] *United States v. Blakney*, 2 M.J. 1135, 1139 (C.G.C.M.R. 1976); *United States v. Lopez*, 20 USCMA 76, 77-78, 42 C.M.R. 268, 269-70 (1970); *United States v. Rehorn*, 9 USCMA 487, 488-89, 26 C.M.R. 267, 268-69 (1958).

### Release of Detailed Defense Counsel

Appellant argues that denial of his choice of defense counsel, with whom he had formed an attorney-client relationship, requires a showing of good cause beyond voluntary orders (averring that LT Burgtorf must have volunteered for the orders), i.e., a showing that LT Burgtorf was the only available, qualified attorney for the mission.

R.C.M. 505(d)(2)(B) governs changes of defense counsel after formation of an attorney-client relationship. In the instant case, it required good cause, which "includes physical

---

[2] We find the Government's arguments attempting to justify the denial unconvincing. We have considerable doubt that it can be justified, provided the recording process is not disruptive.

[3] We believe the issue was waived, certainly as to its nonconstitutional aspects, even though Appellant attempted to preserve it at trial. (R$_2$ at 70.)

disability, military exigency, and other extraordinary circumstances which render [counsel] unable to proceed with the court-martial within a reasonable time. 'Good cause' does not include temporary inconveniences which are incident to normal conditions of military life." R.C.M. 505(f).

> A servicemember may not be deprived of the services of his detailed military defense counsel or his appointed IMC simply because of a routine change in the military attorney's assignment or duty station. Although there may be a "financial, logistical, [or] . . . administrative burden" associated with providing representation by the military counsel with whom an accused has formed an attorney-client relationship, "it is the duty and obligation of the Government to shoulder that burden where possible."

*United States v. Spriggs*, 52 M.J. 235, 239-40 (2000) (citations omitted).

The relevant facts are undisputed.[4] We review the question of whether there was good cause *de novo*.

We find good cause in the form of military exigency for the severing of the attorney-client relationship in this case. *See United States v. Hultgren*, 40 M.J. 638, 640 (N.M.C.M.R. 1994) (deployment of defense counsel to Somalia in early 1993 was a military exigency under R.C.M. 505). We reject Appellant's suggestion that we should examine in detail the justification for the Navy's deployment orders to LT Burgtorf. It is clear from the record that advance notice of orders was given that allowed for management of existing business. It is also clear that, as in all human endeavors, some adjustments can be expected in both existing business and deployment orders. When they occur, creating conflicts, surely the military exigency component of "good cause" means these deployment orders were entitled to priority over the attorney-client relationship.

We are mindful of *United States v. Bevacqua*, 37 M.J. 996, 1000-01 (C.G.C.M.R. 1993), wherein this Court held that a two-month shipboard deployment of defense counsel did not constitute good cause to remove her from the case. This case is different in at least one critical

---

[4] We take judicial notice that the United States was engaged in combat operations in Iraq during 2007 and 2008.

respect.  The scheduled deployment was to last for at least six months.  We agree with the military judge that the delay in trial that this would have entailed would have been unreasonable.  We note, too, that the deployment in this case was to a combat zone, a far clearer and better supported case of military exigency than the circumstances of record in *Bevacqua*.[5]

### Decision

We have reviewed the record in accordance with Article 66, UCMJ.  Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved.  Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges LODGE and TOUSLEY concur.

<div style="margin-left:60%">

For the Court,

Gail M. Reese
Deputy Clerk of the Court

</div>



---

[5] This Court stated in *Bevacqua* that there was "no evidence" that defense counsel's temporary shipboard assignment "constituted a 'military exigency' or 'other extraordinary circumstance.'"  37 M.J. at 1000.