**UNITED STATES, Appellee,**

v.

**David C. SAENZ, Sergeant, U.S. Air Force, Appellant.**

No. 45185.

ACM 23526.

U.S. Court of Military Appeals.

Aug. 6, 1984.

For Appellant: *Colonel George R. Stevens, Captain Conrad C. Baldwin, Jr.,* (on brief).

For Appellee: *Colonel Kenneth R. Rengert, Major Peter Reilly, Captain Brenda J. Hollis* (on brief); *Lieutenant Colonel Andrew J. Adams, Jr.*

*Opinion of the Court*

COOK, Senior Judge:

Pursuant to his pleas, the accused was convicted by general court-martial, military judge alone, of wrongfully possessing 363 grams of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of $200.00 pay per month for 10 months, and reduction to pay grade E–3. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence.

The issue in this case concerns the denial of accused's request for individual defense counsel. 15 M.J. 332 (1983). The initial request came prior to the initiation of the Article 32 investigation. The accused requested Captain Denninghoff [1] to represent him "in all proceeding [sic] concerning the disposition of the charges against me" and gave these supporting reasons:

2. Captain Denninghoff has been my lawyer for over one year. He has ad-

---

**1.** The accused pleaded guilty pursuant to a pretrial agreement containing the signature of Captain Napier as "Defense Counsel." However, other evidence offered at trial indicated that Captain Denninghoff had discussions with the Chief of Military Justice for the special court-martial convening authority concerning "plea negotiations." Captain Napier served as defense counsel at the Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832, investigation as well as at trial. There is no indication that Captain Denninghoff had such unique insight into the case that he would be "presumed to be the only source for the defense team who could accurately gauge the credibility and validity of evidence on matters relating to the events" of the offense. *See United States v. Eason,* 21 U.S.C.M.A. 335, 338, 45 C.M.R. 109, 112 (1972).

vised me on numerous occasions in regard to divorce and family matters. He has also assisted me in preparing my tax forms in the past. Additionally I have spoken with him on several occasions concerning the allegations presently facing me.

3. Captain Denninghoff is a judge advocate. He was formally a member of the 18 CSG base legal office. He has been an area defense counsel in the past. He is qualified in accordance with Article 27(b) UCMJ [10 U.S.C. 827(b)] and Article 42(a) UCMJ [10 U.S.C. 842(a)]. Captain Denninghoff is presently a member of 18 CSG, Kadena Air Base.

This request was denied by the Group Commander, who was the special court-martial convening authority, for three reasons:

    a. First, Captain Denninghoff is no longer a judge advocate nor certified in accordance with Article 27(b), UCMJ. Your detailed defense counsel, Captain Gary L. Napier, is a judge advocate and appropriately certified.

    b. Secondly, although Captain Denninghoff may have advised you on several personal civil problems and prepared your tax return, this advice does not establish a permanent and continuing attorney-client relationship for all matters which subsequently arise.

    c. Third, Captain Denninghoff is my Executive Officer and is a key support figure in the operation of my office. His normal workload precludes him from accepting any further special duties.

At trial the accused renewed his request for Captain Denninghoff as individual

counsel[2] and bolstered his original reasons with a document outlining the history of his requests and an offer of proof as to the expected testimony of Captain Denninghoff. The military judge, after expressing concern over conflict of interest by virtue of Captain Denninghoff's position as executive officer to the special court-martial convening authority, denied the request on the grounds that Captain Denninghoff was not reasonably available.[3]

█ There appears to be little doubt that the accused gave confidential information to Captain Denninghoff and that the latter assisted in the preparation of his defense. In other situations this might have been sufficient to create an attorney-client relationship which could be terminated only for good cause rather than non-availability. *United States v. Rachels*, 6 M.J. 232 (C.M.A. 1979); *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972). However, the panoply of facts here takes this case out of that rule. Although Captain Denninghoff was once a judge advocate and a certified defense counsel, he no longer served in that status. He was at all pertinent times a line officer serving an Air Force commander. The fact that he was also a member of the bar of Iowa at that point was irrelevant to his military duties. There must have been a military reason for Captain Denninghoff to give up his legal duties (and certification) to assume line duties. Consequently, he must be considered in terms of his assigned duties rather than as being an attorney-counsel.

---

2. We note that the accused did not appeal the original denial to "the next echelon of command" as provided for by paragraph 3–6.1(e), AFM 111–1.

3. The military judge also made reference to 18 U.S.C. § 205 in support of his decision. This section provides in pertinent part:

    Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, ... otherwise than in the proper discharge of his official duties—

    *      *      *      *      *      *

    acts as agent or attorney for anyone before any department, agency, court, court-martial, ... or any civil, military, or naval commission in connection with any proceeding, ... charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest—

    Shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

This section would have prevented Captain Denninghoff from acting as accused's counsel, unless he had specifically been made available for that purpose.

■ Although the special court-martial convening authority did not convene the general court-martial which tried the accused, he was involved in investigating the charge and making recommendations as to its disposition. In view of his role as executive officer to that commander, Captain Denninghoff would have a conflict of interest if he had defended the accused. With the consent of both parties, this conflict could have been waived. Obviously the accused would have agreed to waive such a conflict. However, the Government had no obligation to similarly waive the conflict. While a relationship of attorney-client can only be severed "for good cause," certainly this conflict constitutes "good cause" to refuse or deny the services of Captain Denninghoff as individual counsel. Thus, Saenz has no valid complaint for denial of the services of a lawyer who for ethical reasons would have been hampered in the scope of his representation.

We also have doubts as to whether the relationship between Saenz and Denninghoff can be characterized as that of attorney-client. Certainly such a relationship cannot be created unilaterally. There is a question as to whether such relationship could be created with Denninghoff in view of his duty assignment. Thus Denninghoff was treading a narrow ethical line when he undertook to assist the accused in his plea-bargaining attempts.

In either alternative, whether "good cause" existed to sever the relationship or whether such relationship was never properly created, there was no error in denying the services of Captain Denninghoff to the accused as individual counsel. We have examined the record of trial and find nothing wanting in the representation provided by the appointed defense counsel. Indeed, his vigorous presentation of mitigating evidence resulted in a sentence well beneath that set out in the pretrial agreement.[4]

Finding no error prejudicial to the substantial rights of the accused, we affirm the decision of the United States Air Force Court of Military Review.

Judge FLETCHER concurs.

EVERETT, Chief Judge (concurring):

Even though Captain Denninghoff was no longer serving as a judge advocate, I have no doubt that he and appellant entered into an attorney-client relationship insofar as the attorney-client privilege is concerned. *See* Mil.R.Evid. 502(a). In view of the prior legal assistance he had received from Denninghoff, Saenz would reasonably have believed that Denninghoff had been authorized by the armed forces to render professional legal services to members of the armed forces and therefore was his "lawyer." *See* Mil.R.Evid. 502(b)(2) (defining "lawyer").

Furthermore, I feel sure that, even though he was no longer serving as a judge advocate or in another legal capacity, Denninghoff could have been assigned to represent appellant before the court-martial. Neither the Uniform Code of Military Justice nor the Manual for Courts-Martial, United States, 1969 (Revised edition), precludes a lawyer who is not a judge advocate or regularly serving in a legal capacity from representing an accused before a court-martial as individual military counsel, if he is made *available* for this purpose by his commander. In the early days of the Uniform Code uniformed lawyers who were not regularly assigned for legal duties often served as requested defense counsel. Also, Mil.R.Evid. 502(b)(2) indirectly recognizes in its definition of "lawyer" that such an occurrence is permissible. Obviously, when this occurs, there is no violation of 18 U.S.C. § 205, because then the representation is performed by the lawyer "in the proper discharge of his official duties."

---

4. The pretrial agreement limited punishment which could be approved to a bad-conduct discharge, confinement at hard labor for 18 months, reduction to the grade E–1, and forfeitures of two-thirds pay in the grade to which reduced and further provided that no fine would be approved and that equivalent punishments would not be applied to substitute punishment which would change the maximum amount of confinement or forfeitures.

However, even though Denninghoff had entered into an attorney-client relationship with Saenz for purposes of privileged communications and could lawfully have been assigned to represent him before a court-martial if the appellant's request had been granted, I fully agree with the majority opinion that appellant's commander was not legally required to make him available for the trial. In this connection, I distinguish between the attorney-client relationship for purposes of privileged communications under the Mil.R.Evid. 502 and the attorney-client relationship for purposes of determining whether a requested lawyer *must*—rather than *may*—be made available.[1] In short, I believe that circumstances may exist which establish an entitlement to the attorney-client privilege but which do not result in a continuing relationship demanding "good cause" for severance. *Cf. United States v. Taylor*, 3 M.J. 947, 950–51 (N.C.M.R. 1977), *pet. denied*, 4 M.J. 194 (C.M.A. 1977). This might be true, for instance, when an attorney is made available to an accused only for purposes of an identification lineup or merely to advise him in connection with a pretrial custodial interrogation.

In addition, even in cases where an attorney-client relationship has been established of a type that requires "good cause" to sever, "good cause" is itself a relative concept. Thus, in my view the "good cause" required to sever an attorney-client relationship before an Article 32 investigation might be less than after that stage, and before a trial less than after a trial when a rehearing has been ordered.

Furthermore, in providing rules for the availability of counsel after Article 38 UCMJ, 10 U.S.C. § 838, was amended in 1981,[2] the Manual for Courts-Martial recognized that persons performing certain duties should not be assigned to represent accused persons, and they were made ineligible to serve as requested defense counsel.[3] The Manual did not deal with persons who were not assigned as judge advocates—probably on the assumption that such persons would be relatively few in number and there would be few requests for their services. Nonetheless, the basic principle that the very nature of someone's other duties may render him ineligible to serve as a requested defense counsel seems applicable here.

In this case, I need not decide whether the extent of Denninghoff's activity on appellant's behalf created an attorney-client relationship requiring "good cause" to sever.

Captain Denninghoff's responsibilities as "executive" to his group commander were of such a nature as to create an inherent conflict if he represented Saenz, whose case had been processed by the group commander. While Saenz apparently was not concerned about this problem, Denninghoff's commander was; and, in light of this concern, any requirement of "good cause" for severing the tenuous attorney-client relationship between Denninghoff and appellant was satisfied. Furthermore, because Saenz did not appeal from the determination that Denninghoff would not be made available, I conclude that he also fully understood the sound reasons why his request for Denninghoff's services at trial had been denied.

1. The standard for determining the availability of a requested lawyer differs from that for determining whether an existing attorney-client relationship may be severed. *See United States v. Eason*, 21 U.S.C.M.A. 335, 339, 45 C.M.R. 109, 113 (1972).

2. Pub.L. No. 97–81, 95 Stat. 1085, 1088 (1981).

3. The ineligibility to serve as requested counsel did not constitute a disqualification to be appointed defense counsel. *See* para. 48*b* (2), Manual for Courts-Martial, United States, 1969 (Revised edition).