UNITED STATES, Appellee,

v.

Michael D. SPRIGGS, Staff Sergeant,
U.S. Army, Appellant.

No. 98–0940.
Crim.App. No. 9601685.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 26, 1999.

Decided Feb. 17, 2000.

EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., SULLIVAN and GIERKE, JJ., and COX, S.J., joined.

For Appellant: *Captain Donald P. Chisholm* (argued); *Colonel John T. Phelps, II, Colonel Adele H. Odegard,* and *Captain Kirsten V. Campbell–Brunson* (on brief); *Major Holly S.G. Coffey* and *Captain T. Michael Guiffre.*

For Appellee: *Captain Kelly R. Bailey* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer*, and *Captain Mary E. Braisted* (on brief).

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of wrongful distribution of marijuana (3 specifications), dereliction of duty, adultery (2 specifications), and solicitation to distribute controlled substances, in violation of Articles 112a, 92, and 134, Uniform Code of Military Justice, 10 USC §§ 912a, 892, and 934, respectively. Appellant was sentenced to a dishonorable discharge, confinement for 15 years and 6 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

The Court of Criminal Appeals affirmed the findings and sentence. 48 MJ 692 (1998). We granted review of the following issues:

I. WHETHER THE MILITARY JUDGE ERRED BY SEVERING APPELLANT'S ATTORNEY–CLIENT RELATIONSHIP WITH CAPTAIN JAMES MAUS WITHOUT GOOD CAUSE.

II. WHETHER THE ARMY COURT OF CRIMINAL APPEALS IMPROPERLY SHIFTED THE BURDEN TO APPELLANT TO PROVE THAT THE MILITARY JUDGE SEVERED APPELLANT'S ATTORNEY–CLIENT RELATIONSHIP WITH CAPTAIN JAMES MAUS WITHOUT GOOD CAUSE.

III. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHERE THE COURT APPLIED INCONSISTENT EVIDENTIARY REQUIREMENTS (1) BY HOLDING THAT APPELLANT'S FAILURE TO SUBMIT EVIDENCE OF AN EXISTING ATTORNEY–CLIENT RELATIONSHIP WAS FATAL, AND (2) BY HOLDING THAT THERE WAS GOOD CAUSE TO SEVER AN ATTORNEY–CLIENT RELATIONSHIP BASED UPON CAPTAIN MAUS' RELEASE FROM ACTIVE DUTY, DESPITE THE GOVERNMENT'S FAILURE TO INTRODUCE SUCH EVIDENCE AT TRIAL.

IV. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY HOLDING THAT A TRIAL DEFENSE COUNSEL'S RELEASE FROM ACTIVE DUTY PER SE CONSTITUTES GOOD CAUSE TO SEVER AN ATTORNEY–CLIENT RELATIONSHIP.

For the reasons set forth below, we affirm.

## I. BACKGROUND

### A. RIGHT TO COUNSEL

In civilian life, the Supreme Court has held that the Sixth Amendment right to "assistance of counsel" in all criminal prosecutions requires appointment of counsel at government expense if the accused cannot afford to employ an attorney. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (federal proceedings); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (state proceedings). In federal proceedings, attorneys are appointed to represent indigent defendants from a court-approved panel or organization. 18 USC § 3006A(b). The right of an indigent to government-compensated counsel in federal civilian criminal proceedings extends only to the right to representation by an attorney designated by the Government and does not provide the accused with the right to appointment of a particular attorney. *United States v. Davis*, 604 F.2d 474, 478 (7th Cir. 1979); *United States v. White*, 451 F.2d 1225, 1226 (6th Cir.1971). *See* 18 USC § 3006A(c) (permitting the court "in the interests of justice" to "substitute one appointed counsel for another at any stage of the proceedings"). *Cf. Morris v. Slappy*, 461 U.S. 1, 5, 12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (trial judge did not abuse discretion in denying continuance and proceeding with substitute counsel).

Congress has provided members of the armed forces facing trial by general or special court-martial with counsel rights broader than those available to their civilian counterparts. A military accused in such

proceedings has the right to representation by government-compensated military counsel regardless of indigence and also has the right to select a particular military counsel in limited circumstances. These rights reflect the unique nature of military life, in which members are subject to worldwide assignment and involuntary deployment under circumstances when civilian counsel are not readily available.

The right to counsel before general and special courts-martial is governed by Articles 27 and 38, UCMJ, 10 USC § 827 and § 838, respectively. There are three types of counsel under these statutes: (1) detailed counsel; (2) individual military counsel; and (3) civilian counsel retained by the accused at his or her own expense.

Article 27(a)(1) requires that "defense counsel shall be detailed for each general and special court-martial." The Secretary of each Military Department, by regulation, establishes the process for detailing defense counsel to courts-martial. *Id.* In the Army, defense counsel are detailed by the Chief of the trial defense service or that officer's designee. Para. 5–4, Army Regulation (AR) 27–10 (June 24, 1996). If the accused retains civilian counsel, the detailed defense counsel (DDC) acts "as associate counsel unless excused at the request of the accused." Art. 38(b)(4). If individual military counsel is made available, the DDC is excused unless the detailing authority approves "a request from the accused" that the DDC remain as associate counsel. Art. 38(b)(5) & (6).

Article 38(b) permits the accused to be represented by individual military counsel of his own selection if that counsel is determined to be "reasonably available" under applicable regulations. If civilian counsel is retained, the individual military counsel remains as associate counsel unless excused at the request of the accused. Art. 38(b)(4).

As originally enacted in 1950, Article 38 did not authorize any limitation with respect to the determination of whether a particular military counsel was "reasonably available" to serve as individual military counsel (IMC). Over time, this led to concern that some IMC requests for counsel located far from the situs of trial were being submitted as a negotiating tactic with a view towards promoting pretrial agreements rather than for the purpose of selecting a particular counsel. *See* H.R.Rep. No. 306, 97th Cong., 1st Sess. 6–7 (1981). As a result, Congress modified Article 38 in a number of respects, including establishment of a new subsection (7) authorizing regulations governing the selection of IMC. Military Justice Amendments of 1981, Pub.L. No. 97–81, § 4(b), 95 Stat. 1088.

Article 38(b)(7) requires the Secretary of each Military Department and the Department of Transportation to define the term "reasonably available" for purposes of requests for IMC and to "establish procedures for determining whether the military counsel selected by an accused ... is reasonably available." The regulations may not contain blanket exclusions for counsel from another military service. The statute also requires that "[t]o the maximum extent practicable, such regulations shall establish uniform policies among the armed forces while recognizing the differences in the circumstances and needs of the various armed forces."

The IMC regulations issued by each department are subject to the criteria established by the President in RCM 506(b), Manual for Courts–Martial, United States (1998 ed.). RCM 506(b)(1) lists eight categories of persons who "are not reasonably available to serve as individual military counsel because of the nature of their duties or positions." [1] The Rule also provides that the Secretary of each Military Department and the Department of Transportation "may determine other persons to be not reasonably available because of the nature or responsibilities of their assignments, geographic considerations,

---

1. Under paragraph (1) of RCM 506(b), attorneys in the following categories "are not reasonably available" to serve as IMC: general and flag officers; military judges; trial counsel; appellate counsel; principal legal advisors (and their principal assistants in organizations with general court-martial jurisdiction); instructors or students at service schools or academies; college or university students; and the staffs of the Judge Advocates General and their counterparts in the Coast Guard and Marine Corps.

exigent circumstances, or military necessity." Under the Rule, the Secretaries "may prescribe circumstances" in which a person may be found to be "reasonably available" even if in an excluded category "when merited by the existence of an attorney-client relationship regarding matters relating to a charge in question." [2]

Under RCM 506(b)(2), the convening authority normally forwards an IMC request to the "commander or head of the organization, activity, or agency to which the requested person is assigned" for a decision as to reasonable availability of the requested counsel.[3] The convening authority, however, "shall deny" the IMC request without forwarding it if the requested counsel is within the category of persons excluded from consideration by RCM 506(b)(1) or service rule "unless the accused asserts that there is an existing attorney-client relationship regarding a charge in question" or that the person will not be in an excluded category at the time of trial.

The Army's IMC rules applicable to the present case provide that all judge advocates "certified under Article 27(b) . . . are considered reasonably available" unless otherwise excluded under applicable law or regulation. Para. 5–7(b), AR 27–10. The Army's rules add four specific categories to the list of persons excluded by position or duties under RCM 506(b)(1).[4] With respect to persons potentially available as IMC (i.e., those who

do not fall within the categories excluded from service as IMC by regulation), paragraph 5–7(d) of the Army regulation sets forth a procedure for considering "all relevant factors" in making the discretionary decision as to whether a requested counsel is reasonably available.[5] In addition, paragraph 5–7(e) provides the following with respect to all counsel, whether potentially available or in an excluded category:

*Prior attorney-client relationship.*

Notwithstanding the provisions of *c* and *d* above, if an attorney-client relationship exists between the accused and the requested counsel regarding matters that relate solely to the charges in question, the requested counsel will ordinarily be considered available to act as individual military counsel.

 The requirement that requested counsel "ordinarily" will be made available as IMC when an attorney-client relationship "exists" reflects the decisions of this Court governing severance of an attorney-client relationship. Our Court has been vigilant in protecting the relationship between a servicemember and his or her military counsel. *See United States v. Hanson*, 24 MJ 377 (CMA 1987). We have emphasized that "[d]efense counsel are not fungible items." *United States v. Baca*, 27 MJ 110, 119 (1988). A servicemember may not be deprived of the

**2.** Under RCM 506(b)(1), this exception does not apply "if the attorney-client relationship arose solely because the counsel represented the accused on [appellate] review under Article 70."

**3.** *See* 49 Fed.Reg. 17177 (1984).

**4.** Under paragraph 5–7c(3) of the Army regulation, attorneys in the following categories are "not reasonably available to serve as" IMC: Chiefs of Military Justice and their equivalents; judge advocates serving outside the Trial Defense Service region in which the proceeding "will be held, unless the requested counsel is stationed within 100 miles" of the site of the trial; judge advocates whose duty stations are in Panama, Hawaii, or Alaska, for a trial held outside Panama, Hawaii, or Alaska, respectively; and judge advocates stationed at the headquarters of the Trial Defense Service. *See* para. 6–10(b).

**5.** Paragraph 5–7(d) of the Army regulation provides that the reasonable availability determination may take into consideration "all relevant

factors, including, but not limited to": (1) "requested counsel's duty position, responsibilities, and workload"; (2) "[a]ny ethical considerations that might prohibit or limit the participation of the requested counsel"; (3) "[t]ime and distance factors; that is, travel to and from the situs, the anticipated date, and length of the trial or hearing"; (4) "effect of the requested counsel's absence on the proper representation of requested counsel's other clients"; (5) "[t]he number of counsel assigned as trial or assistant trial counsel" to the proceeding; (6) "[t]he nature and complexity of the charges and legal issues involved in the case"; (7) "[t]he experience level, duties, and caseload" of the DDC; and (8) "[o]verall impact of the requested counsel's absence on the ability of the requested counsel's office to perform its required mission; for example, personnel strength, scheduled departures or leaves, and unit training and mission requirements."

services of his detailed military defense counsel or his appointed IMC simply because of a routine change in the military attorney's assignment or duty station. *United States v. Eason*, 21 USCMA 335, 45 CMR 109 (1972); *United States v. Murray*, 20 USCMA 61, 42 CMR 253 (1970); *United States v. Tellier*, 13 USCMA 323, 32 CMR 323 (1962). Although there may be a "financial, logistical, [or] ... administrative burden" associated with providing representation by the military counsel with whom an accused has formed an attorney-client relationship, "it is the duty and obligation of the Government to shoulder that burden where possible." *Eason*, 21 USCMA at 340, 45 CMR at 114. If there is an existing attorney-client relationship between a servicemember and a military attorney concerning the substance of the charges at issue, it may be severed only for "good cause" unless the relationship has been terminated with the consent of the member or by replacement of DDC as a result of the member's request for IMC. *See id.* at 339, 45 CMR at 113; *United States v. Iverson*, 5 MJ 440 (CMA 1978); RCM 505(d)(2)(B), 506(b)(3), and 506(c). In the context of an attorney-client relationship, the "good cause" requirement places a heavy burden on the Government to justify any action that would sever the relationship. *See Iverson*, 5 MJ at 442–43 (footnotes omitted).

■ The "good cause" requirement comes into play, however, only if an ongoing attorney-client relationship regarding the substance of the charges at issue exists at the time of the IMC request. *See* RCM 506(b); para. 5–7(e), AR 27–10; *United States v. Saenz*, 18 MJ 327, 330 n. 1 (CMA 1984) (Everett, C.J., concurring); *cf. United States v. Catt*, 1 MJ 41, 48 (CMA 1975). Communications between a servicemember and a military attorney, even if sufficient to qualify as confidential under the attorney-client privilege, do not necessarily establish the existence of an attorney-client relationship because the privilege protects a communication, even when there is no ongoing attorney-client relationship. *See* Mil.R.Evid. 502(b)(1) & (2), Manual, *supra*. Such communications do not support the existence of

an ongoing attorney-client relationship unless they reflect a bilateral understanding between an attorney and a client as to the ongoing nature of the services to be provided. *Cf. Jane Street Co. v. Rosenberg & Estis, P.C.*, 192 A.D.2d 451, 597 N.Y.S.2d 17 (1st Dept.1993) (person's subjective unilateral belief does not establish existence of an attorney-client relationship). Prior representation of a servicemember by a military attorney does not necessarily demonstrate the existence of an ongoing attorney-client relationship, even when the charges at issue encompass the same subject matter covered during the earlier representation. *See, e.g., United States v. Gnibus*, 21 MJ 1, 8 (CMA 1985) (where charges were not withdrawn by the Government as a "stratagem" for replacing defense counsel and the attorney-client relationship ceased to exist during the member's lengthy unauthorized absence, the member's request for the attorney to be designated as IMC would be considered under standard reasonable-availability criteria and not in terms of severance of an attorney-client relationship).

■ Likewise, if the purpose of a representation limited in time or scope has been completed, such prior representation will not demonstrate the existence of an ongoing attorney-client relationship. As Chief Judge Everett noted in *Saenz*, an attorney-client relationship may involve representation for a limited purpose or period of time, such as representation "for purposes of an identification lineup or merely to advise him in connection with a pretrial custodial interrogation." 18 MJ at 330 (concurring). *Cf. Volpe v. Canfield*, 237 A.D.2d 282, 283, 654 N.Y.S.2d 160, 161 (2d Dept.1997) (requiring plaintiff in an attorney malpractice action to prove existence of an attorney-client relationship by showing "an explicit undertaking to perform a specific task"). In addition, application of the "good cause" limitation on severance requires more than an understanding as to future representation. The attorney's activities must reflect active engagement in the preparation and pretrial strategy of the case.

*See Eason,* 21 USCMA at 339, 45 CMR at 113.[6]

In summary, under the Army regulation, all Army judge advocates certified under Article 27(b) of the UCMJ are potentially available to serve as individual military counsel except for those in a category excluded by Article 38(b), RCM 506,[7] or paragraph 5–7(c) of the regulation. If the judge advocate is not in an excluded category, the commander of the organization to which the judge advocate is assigned must make a reasonable-availability determination upon consideration of "all relevant factors, including" specific regulatory criteria under paragraph 5–7(d) of the regulation. If there is an ongoing attorney-client relationship regarding matters that relate solely to the relevant charges, the requested counsel "ordinarily" will be made available to act as IMC regardless whether the exclusions under paragraph 5–7(c) or the criteria under paragraph 5–7(d) apply.

■■■ If an IMC request has been denied and the defense claims an improper severance of an attorney-client relationship, the defense as the moving party bears the burden of demonstrating that, at the time of the request, the accused had a viable ongoing attorney-client relationship regarding the substance of the charges at issue. In making this showing, the defense must demonstrate both a bilateral understanding as to the nature of future representation and active engagement by the attorney in the preparation and pretrial strategy of the case. If the defense makes such a showing, the burden shifts to the Government to demonstrate good cause for severance of the attorney-client relationship. If the defense cannot make such a showing, the burden shifts to the Government to demonstrate that the judge advocate was not reasonably available under applicable statutory and regulatory criteria. If there was a prior attorney-client relationship that is no longer viable at the time of the request, the Government is not required to demonstrate good cause, but must nonetheless demonstrate that the other reasonable-availability criteria warrant disregarding the prior relationship under the circumstances of the case.

## B. FACTS

Appellant, a Staff Sergeant (SSG), was stationed at Fort Bliss, Texas. In 1995, a year prior to the court-martial that is the subject of the present appeal, appellant was tried by a special court-martial. Captain (CPT) James Maus, a qualified judge advocate, was assigned by the Army to represent him during the 1995 trial at government expense as his detailed defense counsel. The trial resulted in an acquittal.

On April 9, 1996, CPT Maus began a period of terminal leave (now officially designated "transition leave"), a program which allows soldiers with accumulated leave to transition into civilian life before their formal date of separation. *See* para. 4–21, AR 600–8–10, "Personal Absences, Leaves and Passes," ch. 4, section XI (July 1, 1994). By taking terminal leave, CPT Maus was able to relinquish his full-time military duties and begin a new career in the private sector.

Appellant discussed the original charges at issue in the present case with Maus on several occasions between May 21 and 23, 1996. At that time, Maus "was on terminal leave and working in a [civilian] law firm in El Paso, Texas." The record contains little information concerning the nature of the discussions or the amount of preparation, if any, engaged in by Maus. In a post-trial affidavit, Maus noted that "I spoke with SSG Spriggs regarding legal issues he was facing and I gave him legal advice." One of the subjects they discussed was the question whether Maus—who was in civilian practice while on terminal leave—would represent appellant. According to appellant, Maus "said he would, if he could."

On May 23, appellant was apprehended by military law enforcement officials. According to the Criminal Investigation Command

---

6. In making this showing, the defense need only outline the general nature of the requested counsel's activities and need not reveal the substance of any investigation, research, or consultations.

7. *See* n. 3, *supra.*

Agent Activity Summary submitted on appeal by appellate counsel, appellant "request[ed] that we contact his attorney, Mr. MAUS ...." The summary added: "SA HERNANDEZ contacted Mr. MAUS, but he was not at his office. Left message with his reception [sic] to have Mr. MAUS contact this office."

The following day, May 24, CPT Joel Novak was notified by his senior defense counsel (SDC) that he "might be detailed to represent" appellant at a pretrial confinement hearing. According to Novak, the SDC told him that Maus had represented appellant previously and that it was likely that appellant would be requesting Maus to be his attorney. The SDC also said it was "likely" that Novak would "be detailed to represent" appellant "beyond the pretrial confinement hearing, pending possible representation by CPT Maus."

When Novak met with appellant on May 24, appellant stated "that he wanted to be represented by CPT Maus." Appellant also informed Novak that Maus "was now a civilian." Novak noted in response that Maus either "was" or "might still be" on active duty and that appellant "possibly ... could obtain CPT Maus as his" IMC.

According to Novak, appellant "was not sure if he was going to hire CPT Maus as a civilian, submit an[ ] IMC request, or go to trial without his counsel of choice." At some point after May 24, appellant asked Novak to submit a request for Maus to serve as his IMC. Appellant also suggested that he wanted CPT Utz to serve as his IMC if Maus was not available. Novak subsequently determined that CPT Utz was "unable to represent SSG Spriggs due to conflicts."

Maus, who remained on terminal leave, was separated from active duty (ETS) on June 24 and entered the Individual Ready Reserve (IRR) on that date. On June 27, appellant submitted a memorandum to the convening authority, through the Staff Judge Advocate (SJA), requesting that Maus serve as his IMC for a pending pretrial investiga-

tion under Article 32, UCMJ, 10 USC § 832, and possible court-martial. Although the request remained pending when the Article 32 investigation commenced on July 1, appellant was willing to proceed with the Article 32 represented only by his detailed defense counsel, CPT Novak. Appellant was informed by the SJA on July 19 that the IMC request would not be forwarded to the convening authority because Maus no longer was on active duty.

At the court-martial, which commenced with pretrial proceedings under Article 39(a), UCMJ, 10 USC § 839(a), on July 25, 1996, CPT Novak appeared as appellant's detailed defense counsel. The military judge advised appellant of his rights regarding representation by detailed defense counsel, individual military counsel, and civilian counsel.[8]

Appellant requested representation by CPT Novak and CPT Maus. The military judge was advised by the parties that CPT Maus was a reservist, that he was not on active duty, and that the IMC request had not been forwarded to the convening authority of Maus' command.

After further inquiry by the military judge, appellant stated that he wanted to be represented by CPT Maus and that he would like to keep CPT Novak as "second chair." The military judge advised appellant that if CPT Maus were to be "made available," it would "be up to the detailing authority" to decide whether CPT Novak would remain on the case.

The military judge emphasized that he would treat the defense request "as a motion, at this point, to compel forwarding the request through the channels" to CPT Maus' commander. Until that commander was required by the judge to act, the issue of whether the military judge should require Maus to be made available as IMC would not be ripe. Trial counsel opposed forwarding the request on the grounds that Maus should not be made available because he was no longer on active duty.

8. Judge Dale presided at this session. Judge Merck presided at the subsequent session on

August 12 and through the balance of the trial.

Pending his ruling on the motion to forward the request and any resultant action, the military judge provided appellant with two options for the court-martial proceedings: (1) at appellant's request, the military judge would postpone proceedings after arraignment until the IMC issue was resolved; or (2) with appellant's consent, the court-martial would proceed through preliminary motions with CPT Novak as his counsel. Appellant agreed to proceed with that day's consideration of preliminary matters represented only by CPT Novak, but he continued to request representation by CPT Maus in any further proceedings.

On the following day, July 26, the detailed defense counsel, CPT Novak, submitted to the convening authority a new IMC request and asked that it be forwarded to CPT Maus' reserve commander at the Army Reserve Personnel Center in St. Louis, Mo. The portion of appellant's request concerning the existence of an attorney-client relationship noted that "CPT Maus has spoke[n] to SSG Spriggs about this case, and represented him in a prior court-martial which is the subject of the perjury charge and specification." The request also stated that "a definite and long-term attorney-client relationship exists" between appellant and CPT Maus. In terms of the time commitment involved, appellant's request stated that "trial preparation should take less than three weeks and trial should take less than a week." The request also noted that Maus was "willing to absent himself from his private law practice for this case." On July 28, appellant submitted a motion to the military judge requesting an order that CPT Maus be made available as IMC or that the military judge order the Government to present the request to the convening authority and that the convening authority forward it to CPT Maus' commander at the Army Reserve Personnel Center.

On July 31, the military judge announced that he had granted that portion of appellant's motion requiring the Government to forward the IMC request to CPT Maus' commander and stated that the balance of the motion—to compel production of CPT Maus as IMC—was denied as premature. An August 2 response from counsel at the Army Reserve Personnel Center stated that "CPT Maus indicated he will not volunteer to serve on active duty" as appellant's IMC, that there was "no authority to order CPT Maus to active duty" involuntarily absent war or national emergency (citing 10 USC §§ 12301–02), and that "CPT Maus is not, therefore, reasonably available to serve as IMC in this case."

In response to the denial, defense counsel submitted a motion on August 3 to "Sever and Continue" the charge of perjury, which concerned statements made at the previous trial in which he was represented by CPT Maus. The motion stated that "at the direction of his civilian employer, CPT Maus indicated that he would not volunteer to serve on active duty" as appellant's IMC. The motion also noted that appellant had discussed the other charges with CPT Maus on various occasions, but added that "Detailed Defense Counsel is unsure of the amount of involvement of CPT Maus" on the charges other than perjury.

The motion, if granted, would have permitted trial to proceed on all charges except the perjury charge, with appellant represented only by detailed defense counsel. The perjury charge would be severed and continued until Maus could be made available, based on Maus' "unique knowledge" of matters concerning the perjury charge. The Government opposed the motion.

At an Article 39(a) session on August 12, the new military judge confirmed that appellant continued to request CPT Maus as his IMC but that he had agreed to proceed with the pretrial motions represented only by his detailed defense counsel, CPT Novak. Novak advised the judge that any discussion of the IMC issue was "premature at this point" because it was still pending action. He noted that the August 2 response from the Army Reserve Personnel Center had been issued by the command counsel, not the commander, and that the appropriate commander had not yet acted on the request.

On August 20, CPT Maus' commander at the Army Reserve Personnel Center denied the IMC request, noting that Maus would not

consent to active-duty orders and repeating command counsel's assertion that members of the IRR could be involuntarily ordered to active duty only during war or national emergency. Appellant submitted an administrative appeal, which was denied on September 23 by CPT Maus' commander at the Army Reserve Personnel Center. The Commander, in a memorandum to CPT Novak explaining the denial of the IMC request, provided the following information on the reason CPT Maus would not consent to active-duty orders:

> CPT Maus is not willing to absent himself from the private practice of law for this case. Regarding his availability, he was repeatedly telephonically contacted, offered a DA Form 1058 (Application for Active Duty) whereafter he indicated his necessity to remain at his place of private employment, especially at the beginning of his new legal career. He will be substituting for his civilian superior who has a capital homicide case to defend.

The commander enclosed an Application for Active Duty, noting that the form, "if signed by CPT Maus and returned, will cause a reconsideration of my position."

At an Article 39(a) session on September 30, the military judge obtained the parties' agreement that "the appropriate commander" had acted on the request, that Maus would not "consent to being recalled to active duty" as appellant's IMC, "that there was no mechanism to bring [Maus] back on active duty without his consent," and that both parties were prepared for the military judge to rule on the basis of "the factual predicate" presented by the defense and the documents in the appellate exhibits. After considering those matters, the military judge denied the defense motion to compel CPT Maus' appearance as appellant's IMC. On the following day, the perjury charge was dismissed on motion by the Government for reasons unrelated to the IMC request. At trial on the merits, appellant was convicted of a number of the charged offenses, as noted at the outset of this opinion.

During review by the Court of Criminal Appeals, appellant claimed that he had an attorney-client relationship with CPT Maus, which the military judge severed. 48 MJ at 694. The court rejected this contention, concluding that appellant "failed in his burden to establish the existence of a bona fide attorney-client relationship regarding this case" and that appellant "made no showing whatsoever that Captain Maus actively engaged in pretrial preparation and strategy of this case." The court added that even if there had been an attorney-client relationship, it "was legally severed by Captain Maus' departure from active duty" and that the Army had "no authority to compel or pay for the services of" a civilian defense counsel. With respect to CPT Maus' reserve status, the court noted that because CPT Maus had not volunteered for recall to active duty, "the Army and the accused would be limited to the fifteen days of involuntary active duty authorized by law in which to prepare for and try the case." [9] The court concluded that 15 days would not have provided an adequate period of time for counsel "to investigate, prepare, and try" the case. Under those circumstances, the court concluded that denial of the IMC request was appropriate. 48 MJ at 697.

## II. DISCUSSION

 The ruling of a military judge on an IMC request, including the question whether such a ruling severed an attorney-client relationship, is a mixed question of fact and law. Legal conclusions are subject to *de novo* review, and findings of fact are reviewed under a clearly erroneous standard. *United States v. White*, 48 MJ 251, 257 (1998); *see* S. Childress & M. Davis, 2 Federal Standards of Review § 7.05 at 7–26 to 36 (2d ed.1992).

---

9. 48 MJ at 697. The court observed that the military judge and the parties at trial had proceeded on the assumption that a member of the Individual Ready Reserve could be involuntarily recalled to active duty only in war or national emergency, overlooking the general authority to order such a reservist to active duty for 15 days at any time without his or her consent. 48 MJ at 695 (citing 10 USC § 12301).

■ At trial, appellant did not claim—as he does now—that the military judge severed his attorney-client relationship without good cause. Instead, as appellant has acknowledged on appeal, the issue was litigated at trial as an individual-military-counsel request. In that posture, the question before the military judge was whether the requested counsel was "reasonably available" under Article 38(b), RCM 506(b), and paragraph 5–7 of AR 27–10.

Regardless how such an issue may be framed, an accused who either alleges severance of an attorney-client relationship or seeks to invoke such a relationship for purposes of supporting an IMC request must first demonstrate that, at the time of the request, the accused had a viable ongoing attorney-client relationship regarding the substance of the charges at issue. As noted in Part IA, *supra*, the accused must show that there was a bilateral understanding on the part of both the attorney and the client as to the nature of the services to be provided.

In the present case, the record of trial does not demonstrate that Maus agreed to enter into an attorney-client relationship with appellant. Appellant did not introduce or proffer any evidence demonstrating that Maus agreed to represent appellant at trial. Appellant's colloquy with the military judge at trial indicates that appellant understood that there was no agreement to enter into an ongoing attorney-client relationship:

MJ: [W]hat did he [Maus] say about representing you?

ACC: He said he would if he could.

Appellant's testimony shows, at most, a conditional response by Maus, not a commitment to representation. Furthermore, the record of trial does not indicate that Maus engaged in any substantive activity on behalf of appellant beyond discussing some of the pending charges and the possibility of representation. As a result, appellant did not establish at trial the existence of an attorney-client relationship that would be protected under the "good cause" limitations on severance.

The only indication of a pertinent relationship between appellant and Maus reflected in the record of trial involved discussions undertaken by Maus in his capacity as a practitioner in the private sector. In that context, the military judge did nothing to sever the relationship between appellant and Maus. Appellant remained free to retain Maus as his civilian attorney under Article 38(b)(2). Insofar as the rules governing requests for individual military counsel take into account the existence of an attorney-client relationship, *see, e.g.*, para. 5–7, AR 27–10, the context of those rules contemplates a relationship between a servicemember and a military attorney, not a civilian practitioner.

■ We hold that, if a civilian attorney happens to be a reservist, that person's availability as individual military counsel must be determined on the basis of activities undertaken in his or her military status, not on the basis of attorney-client relationships developed in civilian practice. To the extent that a servicemember forms a relationship with an attorney in the attorney's civilian capacity, that relationship does not require designation of the attorney as individual military counsel unless the person is otherwise found to be reasonably available under applicable laws and regulations.

Although appellant clearly formed an attorney-client relationship with CPT Maus during his first trial in 1995, that relationship ended with his acquittal. The subsequent perjury charges related to that trial did not revive the relationship absent a bilateral understanding establishing an ongoing attorney-client relationship and active engagement by the attorney in pretrial preparation and strategy. *See* Part IA, *supra*. In any event, dismissal of the perjury charge prior to trial on the merits rendered harmless any error in this regard.

■ Even if appellant could make the requisite showing concerning the existence of a qualifying military attorney-client relationship, the record demonstrates that there was ample basis for denying the IMC request under the good-cause standard. The Uniform Code of Military Justice authorizes providing defense services at government expense by persons who are in a military sta-

tus. *See* Arts. 27 and 38. Absent government misconduct, the routine separation of a judge advocate from active duty normally terminates any attorney-client relationship established on the basis of the attorney's military status, except when: (1) the attorney agrees to represent the client in his or her civilian capacity; or (2) the attorney enters the reserves and is ordered to represent the client to the extent permitted by applicable law based upon a determination by the appropriate official of reasonable availability. *Cf.* para. 1b(2), App. C., AR 27–10. In the present case, the record is clear that Maus, after his separation from active duty, did not agree to represent appellant either as a reserve judge advocate or as a civilian attorney.

Even if Maus could have been involuntarily recalled to active duty for 15 days, *see* 48 MJ at 695 (citing 10 USC § 12301(b)) we agree with the Court of Criminal Appeals that, as a general matter, 15 days would provide "inadequate time to investigate, prepare, and try a general court-martial under normal conditions." 48 MJ at 697. Although we need not decide today whether there are any circumstances in which a reservist may be recalled involuntarily to active duty to serve as an IMC, we are confident that no such recall is required in a case where the proponent of the request has not demonstrated that: (1) an attorney-client relationship was established in the context of the attorney's military assignment; (2) that the attorney accomplished substantial trial preparation while in that assignment; and (3) that any additional preparation and trial appearances could be readily accomplished within the authorized period of involuntary active duty.

In the present case, our review of the 746–page record of trial and the numerous exhibits confirms that this was not a trial in which counsel reasonably could have been expected to undertake investigation, preparation, and trial activities within 15 days. We note that appellant, in one of the submissions in support of designating CPT Maus as IMC, stated that the case was "very complex both factually and legally" and in another submission indicated that the case could involve up to 3 weeks for trial preparation.

In short, even if appellant had demonstrated that there was an attorney-client relationship based upon Maus' military status, there was ample good cause for allowing the relationship to be terminated by the separation from active duty without involuntarily recalling him for 15 days' service as a reservist. Under those circumstances, any error at trial in overlooking the recall authority was harmless. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

## CONCLUSION

Appellant has not demonstrated that he established a qualifying attorney-client relationship with CPT Maus. Even if he had demonstrated the existence of such a relationship, the separation of CPT Maus from active duty constituted good cause for termination of any such relationship in the circumstances of this case.

The decision of the United States Army Court of Criminal Appeals is affirmed.