# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Gregory (NMN) PHILLIPS
### Electrician's Mate Second Class (E-5), U.S. Coast Guard

## CGCMG 0154

## Docket No. 1123

## 13 March 2002

General Court-Martial convened by Commander, Fourteenth Coast Guard District, Honolulu, Hawaii.  Tried at Pearl Harbor, Hawaii, on 2 and 3 June 1999.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | LCDR Steven M. Stancliff, USCG |
| Assistant Trial Counsel: | LT Sarah Gill, JAGC, USNR |
| Detailed Defense Counsel: | LT Stephen Astley, JAGC, USNR |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCGR (on brief) |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT(jg) Mark A. Cunningham, USCGR (on brief) |
| | LT Daniel J. Goettle, USCG |

## BEFORE
## PANEL TWO
## BAUM, KANTOR,[1] & PALMER
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by general court-martial, judge alone.  Pursuant to pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of one specification of indecent assault of a female first class petty officer, and one specification of unlawful entry into the petty officer's bedroom, in violation of Article 134 of the Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to confinement for one year, forfeiture of $900 per month for 12 months, and reduction to pay grade E-3.  In accordance with the pretrial agreement, the Convening Authority approved the sentence as adjudged, but suspended all confinement in excess of 240 days for a period of six months, and waived $292 of automatic forfeitures under Article 58b,

---

[1] On 11 March 2002, Judge Kantor assumed duty as Acting Deputy Chief Counsel of the Coast Guard, and was temporarily removed from the Court on that date for the period of that duty, with all appellate military judge functions to be resumed upon completion of that assignment.  Judge Kantor participated fully in the decision in this case while on the Court, and finalized his concurrence in this opinion prior to 11 March 2002.

UCMJ, for five-plus months. Before this Court, Appellant has assigned one error. Citing *United States v. Spriggs*, 52 M.J. 235 (2000), Appellant asserts that the military judge erred to his material prejudice by failing to grant a continuance and abatement of proceedings until a requested Coast Guard law specialist would be available to serve as individual military counsel (IMC). In support of this assertion, Appellant contends that he had a pre-existing attorney-client relationship with the requested IMC as to the charged offenses and the Government had not shown good cause to sever that relationship. Consequently, according to Appellant, the findings and sentence should not be affirmed and a rehearing should be ordered. For the reasons that follow, the assignment of error is rejected and the findings and sentence are affirmed.

## I. Factual Background

Appellant's counsel at trial was a Navy Lieutenant, who had been detailed approximately four months earlier to represent Appellant at a pretrial investigation under Article 32, UCMJ, and any subsequent court-martial that might result. After carrying out his responsibilities at the Article 32 investigation, counsel continued preparations for the instant general court-martial by, among other things, filing motions and participating in conferences with the judge and trial counsel under Rule for Courts-Martial (RCM) 802. At one of the RCM 802 conferences, a firm trial date was agreed upon. Six days before trial was scheduled to commence, Appellant telephoned an experienced trial attorney, LCDR William Shelton, USCG, seeking advice. Appellant was apparently motivated by his concern that this would be his detailed counsel's first trial alone. Five days before the scheduled trial date, Appellant, through detailed counsel, requested the appointment of LCDR Shelton as individual military counsel (IMC). The Convening Authority, Commander, Fourteenth Coast Guard District, initially denied the request based on Article 3-C-3 of the Coast Guard's Military Justice Manual (MJM), COMDINST M5810.C (Jan. 15, 1991), which was in effect at the time of trial.[2] Among other things, Article 3-C-3 set forth categories of Coast Guard personnel deemed not reasonably available as IMC because of the nature of their assignments. In an RCM 802 conference, detailed defense counsel indicated that he would seek review of that denial and requested a trial continuance in order to resolve the IMC matter. The Government objected, and the judge observed that Appellant could have determined the need for an IMC much earlier, particularly since a trial date had been set for a month. Nevertheless, the judge granted a continuance for thirty-seven days, as reasonable and necessary because of the unsettled counsel situation. The judge considered that delay sufficient for Appellant to explore his counsel options and to have a fully prepared counsel by the new trial date.

Within that allotted time, the convening authority reevaluated his initial denial and forwarded the IMC request to the Staff Judge Advocate (SJA) for Commander, Atlantic Area, for decision pursuant to Article 3-C-3.d of the MJM. Commander, Atlantic Area, LCDR Shelton's immediate commander, denied the request after determining that LCDR Shelton was not reasonably available. In making that determination, which accorded with the view of his SJA, Commander, Atlantic Area and his SJA considered the ongoing reorganization of the Hearing Officer Program, to which LCDR Shelton was assigned. That reorganization included the closing of LCDR Shelton's office in New Orleans, LA, and his move to Arlington, VA. Because of work associated with the office closing and move to Virginia, along with hearings already scheduled, both Commander,

---

[2] This material is the subject of Article 3.H.3 of the current MJM, COMDTINST M5810.1D (Aug. 17, 2000). The two are substantially similar. All references here are to the earlier edition.

Atlantic Area, and his SJA were of the view that LCDR Shelton's absence for preparation and trial of the case would significantly and adversely impact the functioning of his office.

In response to Commander, Atlantic Area's action, Appellant filed a motion with the military judge requesting that he either set aside the denial and order LCDR Shelton's attendance as IMC, or, in the alternative, that he grant a continuance until such time as concerns about the relocation of LCDR Shelton's office subsided and he could be made available to act as IMC. The military judge denied the motion, opining that under the Manual for Courts-Martial (MCM) and *United States v. Redding*, 11 M.J. 100 (CMA 1981), he did not have authority to set aside the denial of the IMC request. The judge also found that Commander, Atlantic Area, did not abuse his discretion in determining that LCDR Shelton was not reasonably available. With respect to the continuance request, the judge concluded that it would be unreasonable to grant an open-ended delay without any idea when, if ever, LCDR Shelton might become available. Appellant argues now that the denial of the requested continuance was prejudicial error because the Government was required to show more than unavailability of LCDR Shelton in order to refuse to provide him as IMC, given Appellant's pre-existing attorney-client relationship with LCDR Shelton as to the charged offenses. Appellant asserts that the Government severed that attorney-client relationship without the necessary showing of good cause.

Appellant bases his claim of a pre-existing attorney-client relationship on two telephone conversations with LCDR Shelton the day before the IMC request was submitted. Appellant had neither met nor spoken with LCDR Shelton prior to the first call. In that conversation, Appellant apprised LCDR Shelton of his situation and sought advice. LCDR Shelton was willing to discuss the case and his possible availability as IMC, but was unwilling to discuss the matter at length without detailed defense counsel and would not say anything that might undermine that counsel. This resulted in a second call that included both Appellant and detailed defense counsel. During that second call, trial strategy and preparations were discussed. LCDR Shelton also expressed his willingness to act as IMC, but in an affidavit he states that he made it clear that he could not represent Appellant without Coast Guard approval. Also in that affidavit, LCDR Shelton indicates that, subsequent to the conversation and before the IMC request was denied, he briefed his immediate supervisor, who interposed no objection to his serving as IMC as long as he was able to complete all of his primary duties in a timely fashion, which LCDR Shelton assured the supervisor he would be able to do. LCDR Shelton also states that, before the IMC request was denied, he had at least two other three-way conference calls with detailed defense counsel and Appellant, and perhaps two calls with counsel alone, all involving privileged matters pertaining to preparation and strategy. LCDR Shelton expressed an opinion in his affidavit that he had established a *bona fide* attorney-client relationship with Appellant and that he was engaged actively in the preparation and pretrial strategy of the case. He also stated that he would be available for a trial during the first week of June, which was when the earlier granted continuance was to expire.

## II. Applicable Law

Article 38(b)(3)(B), UCMJ, is the statutory basis for IMC requests. That Article provides for representation by military counsel of an accused's own selection if that counsel is reasonably available under regulations prescribed by the Secretary concerned. RCM 506(b)(1) further implements that code provision by setting out certain categories of persons not reasonably available because of the nature of their duties or positions. It goes on to authorize the Secretary concerned to determine others who are not reasonably available by virtue of their responsibilities, geographic

considerations, exigent circumstances or military necessity, and also permits the Secretary to prescribe circumstances under which exceptions may be made when merited by the existence of an attorney-client relationship regarding matters relating to a charge in question. RCM 506(b)(2) sets out the path to take in acting on a request for IMC and authorizes the Secretary concerned to prescribe procedures for determining whether a requested person is "reasonably available."

Article 3-C-3 of the MJM constituted the Secretarial regulation on this subject for Coast Guard personnel. That Article included persons assigned to an out-of-specialty or non-legal billet, such as the hearing officer billet to which LCDR Shelton was assigned, among the additional personnel deemed not reasonably available to serve as IMC. However, if an attorney in one of these billets had previously established an attorney-client relationship with the accused regarding a charged offense, then the attorney's availability was required to be determined under procedures set out further in the Article. Under those procedures, the convening authority was required to forward the IMC request to the SJA for the commander of the organization to which the requested counsel was assigned. The SJA was then required to determine whether the requested counsel was reasonably available. If he concluded that the counsel was not reasonably available, the request was then to be forwarded to the commander to determine the matter. In order to provide a basis for review, the determinations by both the SJA and the commander were required to be in writing and to contain the reasons therefore.

In determining the availability of counsel, Article 3-C-3.e stated that all relevant factors may be considered, including, but not limited to, the following:

(1) The existence of an attorney-client relationship between the accused and the requested counsel regarding a charged offense. . . .

(2) Any disqualifying factors relating to the counsel's duty assignment; any previous involvement with the case as an investigating officer or a witness; or assignment to the same rating chain of the trial counsel. The requested counsel's duty, position, responsibilities, and workload.

(3) Any ethical considerations that might prohibit or limit the participation of the requested counsel.

(4) Time and distance factors, i.e., . . . the nature and complexity of the charges and legal issues involved in the case, associated costs and availability of funding. . . .

(5) The effect of requested counsel's absence on the proper representation of counsel's other clients.

(6) Overall impact of the requested counsel's absence on the ability of [his] office to perform its required mission . . . .

Separate and apart from the foregoing rules for determining availability of requested counsel, case law has established that "[i]f there is an existing attorney-client relationship between a servicemember and a military attorney concerning the substance of the charges at issue, it may be severed only for 'good cause' unless the relationship has been terminated with the consent of the member or by replacement of DDC [detailed defense counsel] as a result of the member's request for IMC." *United States v. Spriggs*, 52 M.J. 235, 240 (2000) (citing *United States v. Eason*, 21 USCMA 335, 339, 45 CMR 109, 113 (C.M.A. 1972); *United States v. Iverson,* 5 M.J. 440, (CMA 1978); RCM 505(d)(2)(B), 506(b)(3), and 506(c)). "In the context of an attorney-client relationship, the 'good cause' requirement places a heavy burden on the Government to justify any action that would sever the relationship." *Id.* (citing *Iverson,* 5 M.J. at 442-43).

### III. Discussion

The procedures followed by those persons acting on Appellant's request for LCDR Shelton as IMC were in accord with the requirements of RCM 506 and Article 3-C-3 of the MJM. The factors considered by Commander, Atlantic Area, and his SJA were pertinent and authorized by Article 3-C-3. Moreover, the evidence supports their conclusions that LCDR Shelton was not reasonably available to act as IMC. We agree with the military judge's finding that Commander, Atlantic Area's, determination in that regard was not an abuse of discretion. Furthermore, we expressly find that, given the proper determination that LCDR Shelton was not reasonably available for trial on the scheduled date, it was not an abuse of discretion for the military judge to refuse to grant an open-ended continuance until such time as LCDR Shelton would be available. My statement in *United States v. Kilby*, 3 M.J. 938, 943 (NCMR 1977), and repeated in *United States v. Furgason*, 6 M.J. 844, 848 (NCMR 1979) (Baum, S.J., concurring in the result), seems *apropos*:

> The right to military counsel of one's own selection is not an absolute right, but is subject to the exigencies and practicalities of whatever situation may obtain at the time. The right to choose counsel in the first instance may not be insisted on in such a manner as to obstruct any other important operations of the service concerned or the orderly administration of justice; hence, the Code and the *Manual* comprehend the possibility that if requested counsel is not reasonably available, an accused will be permitted to stand trial with no other military counsel but the one appointed by the convening authority, although such counsel may not be the first preference of the accused.

3 M.J. at 943-44.

Appellant does not appear to challenge the determinations with respect to reasonable availability. Instead, he argues that he and LCDR Shelton had a preexisting attorney-client relationship that could be severed only by a showing of good cause, which requires more than establishing that the counsel was not reasonably available. According to Appellant, the Government failed to set out the requisite good cause for severing his relationship with LCDR Shelton, and, consequently, the military judge should have granted a continuance until such time as LCDR Shelton could appear at trial and carry out his responsibilities as Appellant's attorney. The main problem with this argument is that LCDR Shelton was not a previously detailed counsel with whom Appellant had an ongoing attorney client relationship concerning the charges under consideration, nor was he ever authorized to represent Appellant in any capacity.

Although the previously quoted language from *Spriggs*, *supra*, is broad enough to encompass attorney-client relationships with counsel who have not been detailed to represent the accused in question, the fact of the matter is that cases where it has been held that an attorney-client relationship was severed improperly without a showing of good cause, the attorney-client relationship was with a detailed or appointed counsel. *E.g. Eason*, *supra*; *United States v. Catt*, 1 M.J. 41 (CMA 1975); *United States v. Andrews*, 21 USCMA 165, 44 CMR 219 (CMA 1972); *United States v. Tellier*, 13 USCMA 323, 32 CMR 323 (CMA 1962); *United States v. Bevacqua*, 37 M.J. 996 (CGCMR 1993). Moreover, RCM 505(d)(2)(B) states specifically that "[a]fter an attorney-client relationship has been formed between the accused and *detailed* defense counsel or associate or assistant defense counsel," (emphasis added), an authority competent to detail such

counsel may excuse or change such counsel for only very limited reasons, including good cause shown on the record.

Both Appellant and LCDR Shelton believed they had established a viable attorney-client relationship, contemplating representation at trial. However, competent authority never approved such representation by LCDR Shelton, nor was he detailed as counsel for Appellant at an earlier time for some other matter that could have reasonably led to the instant charges. For someone assigned to non-legal duty in an out-of-specialty billet, the need for authorization to engage in legal representation is particularly important. Without such authorization, the conversations with Appellant produced, at most, potentially protected communications under the attorney-client privilege, but nothing more. As stated in *Spriggs*, *supra*: "Communications between a servicemember and a military attorney, even if sufficient to qualify as confidential under the attorney-client privilege, do not necessarily establish the existence of an attorney-client relationship because the privilege protects a communication, even when there is no ongoing attorney-client relationship." 52 M.J. at 240.

## IV. Conclusion

For the foregoing reasons, the record of trial does not establish the kind of attorney-client relationship between Appellant and LCDR Shelton that would require a showing of good cause to sever. Accordingly, the military judge did not abuse his discretion in denying an open-ended continuance until such time as LCDR Shelton would be available to represent Appellant. Moreover, we find the determination by competent authority that LCDR Shelton was not available to act as Appellant's IMC to be in accord with regulations and supported by the evidence. For that reason the denial of Appellant's IMC request was proper. Appellant's assignment of error is rejected.

After review of the record in accordance with Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact, and on the basis of the entire record should be approved. Accordingly, the findings and sentence, as approved and partially suspended below, are affirmed.

Judges KANTOR and PALMER concur.

For the Court,



Kevin G. Ansley
Clerk of the Court